UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BATHSHEBA SHUNQUITA QUEEN,<br><br>Plaintiff,<br><br>v.<br><br>LESHAWN MOONEY,<br><br>Defendant. | Case No. 24-cv-02161-SVK<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 8 |

Self-represented Plaintiff Bathsheba Shunquita Queen alleges that Defendant LeShawn Mooney sexually harassed her. She commenced this action to obtain a restraining order against Defendant. *See* Dkt. 1-1 (the "Complaint"). Both Parties work for the United States government, and, in moving to dismiss this action, Defendant raises the sovereign immunity of the United States as an all-encompassing bulwark against Plaintiff's claims. *See* Dkt. 8 (the "Motion"); *see also* Dkts. 16 (Plaintiff's late-filed opposition), 17 (Defendant's reply). But employment with the federal government does not grant a defendant unfettered impunity—acts outside the scope of a defendant's authority arising from that employment may be actionable. Accordingly, after considering the Parties' briefing, relevant law and the record in this action, and for the reasons that follow, the Court **DENIES** the Motion.[1]

///
///
///
///

---

[1] The Parties have consented to the jurisdiction of a magistrate judge. *See* Dkts. 7, 10. The Court has determined that the motion is suitable for resolution without oral argument. *See* Civil Local Rule 7-1(b).

## I. BACKGROUND[2]

Plaintiff works as a nurse practitioner at the VA Palo Alto Health Care System (the "VA"). *See* Complaint at ECF Page 8. She alleges that Defendant, who oversees the work of Plaintiff and other nurse practitioners at the VA (*see id.* at ECF Page 9), sexually harassed her on numerous occasions:

- On a 6.5-hour phone call with Plaintiff, which occurred outside of work hours, Defendant discussed her sexual history (including "that she was not looking for a man right now because she thought a man might be harboring a sexually transmitted disease") and inquired about Plaintiff's romantic interests, seemingly while taking a bath. *See id.* at ECF Page 12.

- On a different phone call, which also occurred outside of work hours, Defendant told Plaintiff a story about a woman giving birth in graphic detail. *See id.* Defendant "laughed hysterically and repeated the story over and over." *See id.* Plaintiff told Defendant "that she found the story disturbing." *See id.*

- On yet another phone call outside of work hours, Defendant told Plaintiff a story about a nurse-practitioner student performing a vaginal exam without gloves and without the patient's knowledge or consent. *See id.* at ECF Pages 8, 21. Plaintiff expressed her "disgust[]" at the story (*see id.*), but Defendant "laughed for several minutes and remained on the subject." *See id.* at ECF Page 21.

- Defendant once scheduled Plaintiff for a "skills check at noon while everybody was out of the office. At the end of the skills check, [Defendant] turned off all of the lights in the room they were in, then walked back over to [Plaintiff] and told her to use the vein finder on her." *See id.* at ECF Page 12. Plaintiff complied, and as she did so, Defendant "smiled and began talking to [Plaintiff] in a low voice that made Plaintiff feel uncomfortable, at

---

[2] Defendant moves to dismiss for lack of subject-matter jurisdiction. *See* Motion at 3. Because she raises a facial challenge to the sufficiency of the allegations in the Complaint (as opposed to a factual challenge based on evidence outside the Complaint), the Court will accept the truth of Plaintiff's allegations for purposes of resolving the Motion. *See, e.g.*, *Harborview Fellowship v. Inslee*, 521 F. Supp. 3d 1040, 1046 (W.D. Wash. 2021) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004)).

2

which point [Plaintiff] walked over and turned the lights back on." *See id.*

- On "[t]he same day as the vein finder incident, [Defendant] was sitting with [Plaintiff,] . . . rubbed her hand down the top of her white t-shirt and rubbed her chest slowly, just above her right breast. She was gazing at [Plaintiff] and talking to her while she was doing this." *Id.*

- On multiple occasions after Plaintiff and Defendant completed a joint visit to a patient's home, Defendant "would follow [Plaintiff] to her government vehicle and corner [Plaintiff] outside of her vehicle to prevent her from leaving the scene." *See id.* at ECF Page 13. Plaintiff successfully avoided Defendant after two joint visits, but Defendant subsequently ignored Plaintiff's "requests for training or assistance with patient care needs until [Plaintiff] acquiesced to staying with [Defendant] after another joint home visit to listen to [Defendant] talk about her personal matters and allow [Defendant] to stand in [Plaintiff's] personal space." *See id.* at ECF Pages 13-14.[3]

Eventually, Plaintiff told Defendant that she "did not feel comfortable having conversations with [Defendant] after work hours or on [Plaintiff's] personal cell phone and that [Plaintiff] felt it would be best if [they] put some physical distance between [them] at work." *See id.* at ECF Page 8. Defendant ignored Plaintiff's entreaty, and the harassment continued. *See id.* Plaintiff responded by filing an internal complaint against Defendant, ultimately resulting in Plaintiff entering into an agreement with the VA, under which Defendant would limit her contact with Plaintiff. *See id.* at ECF Pages 44-45, 91-92.

To accommodate this agreement, the VA initially permitted Plaintiff to virtually attend certain meetings to avoid physical proximity with Defendant. *See id.* at ECF Page 15. Eventually, however, the VA required Plaintiff to return to attending those meetings in person. *See id.* At those meetings, Plaintiff would "always see [Defendant] gazing at [her and] smiling . . . like a school girl with a crush, and finding reasons to call [Plaintiff's] name to engage [Plaintiff] in

---

[3] The Complaint includes other allegations of harassing behavior as well, both of a sexual and non-sexual nature. *See, e.g.*, Complaint at ECF Pages 12-14.

3

conversation with her." *See id.* at ECF Page 22. Defendant also began "institut[ing]" private "nurse huddle[s]" to occur after these in-person meetings. *See id.* at ECF Page 9. At one of these nurse huddles, Defendant, "along with the 4 other female [nurse practitioners] on the team, colluded together to falsely accuse [Plaintiff] of disrespecting [Defendant]," which resulted in the VA issuing a "written reprimand" to Plaintiff. *See id.*

Plaintiff now fears for her "job, career, and livelihood," which she believes Defendant has placed "in jeopardy." *See id.* Accordingly, she commenced this action in the Superior Court for the County of Santa Clara, seeking the issuance of a "civil harassment restraining order" that would require Defendant "to stay at least 100 yards away from" Plaintiff, her home, her workplace, her school and her car. *See id.* at ECF Pages 2, 5. Defendant removed the action to this Court under the federal-officer removal statute (28 U.S.C. § 1442). *See* Dkt. 1 ¶¶ 4-7.

## II.    LEGAL STANDARD

Defendant moves to dismiss this action under Federal Rule of Civil Procedure 12(b)(1). Under Rule 12(b)(1), a court must dismiss a complaint if it lacks subject-matter jurisdiction over the claims asserted. A defendant can challenge a court's subject-matter jurisdiction by mounting either (1) a facial attack based solely on the allegations of the complaint or (2) a factual attack based on evidence outside the pleadings. *See Safe Air*, 373 F.3d at 1039. Invoking the defense of sovereign immunity implicates Rule 12(b)(1). *See Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015).

## III.   DISCUSSION

Defendant argues that the Court lacks subject-matter jurisdiction under (1) the doctrine of sovereign immunity and the Supremacy Clause of the United States Constitution and (2) the doctrine of derivative jurisdiction. The Court rejects both arguments.

///

///

///

///

4

**A.     Neither Sovereign Immunity Nor The Supremacy Clause Bar Plaintiff's Claim**

Under the doctrine of sovereign immunity, "[s]uits against the government are barred for lack of subject matter jurisdiction unless the government expressly and unequivocally waives its" immunity from such suit.  *See E.V. v. Robinson*, 906 F.3d 1082, 1090 (9th Cir. 2018) (citation omitted).  The doctrine applies even where a plaintiff does not sue the United States directly and instead sues a government employee if the relief requested would "restrain the Government from acting."  *See FBI v. Superior Ct. of Cal.*, 507 F. Supp. 2d 1082, 1094 (N.D. Cal. 2007).  Similarly, the Supremacy Clause of the United States Constitution precludes state law from "imped[ing a federal] officer from performing his duties."  *See Figueroa v. Baca*, No. 17-cv-01471-PA, 2018 WL 2041383, at *3 (C.D. Cal. Apr. 30, 2018) (citing *Denson v. United States*, 574 F.3d 1318 (11th Cir. 2009)).  Thus, where a plaintiff requests relief that would interfere with a federal employee's ability to do their job, sovereign immunity and the Supremacy Clause generally prohibit a court from granting that relief.

However, an exception exists:  neither sovereign immunity nor the Supremacy Clause bar suit where the federal employee acts outside the scope of their authority.  *See Robinson*, 906 F.3d at 1091 (sovereign immunity does not apply where, *inter alia*, government employee acts "beyond their statutory powers"); *Oregon v. U.S. Dist. Ct. for Dist. of Or., Eugene*, No. 24-161, 2024 WL 2270514, at *1 (9th Cir. May 20, 2024) (Supremacy Clause immunizes only those "acts (1) within the scope of the federal officer's authority (2) that are 'necessary and proper'").[4]  Accordingly, even if a plaintiff seemingly triggers the protections of sovereign immunity and the Supremacy Clause by requesting relief that would hamper a federal employee's ability to do their job, those protections will not apply where the plaintiff requests that relief in response to the unauthorized acts of the federal employee.

Here, Defendant argues that sovereign immunity and the Supremacy Clause bar Plaintiff's suit because, even though Plaintiff sues Defendant and not the United States directly, some of the

---

[4] Although the Ninth Circuit does not appear to have expressly set forth the standard for Supremacy Clause immunity in the context of civil liability, the doctrine does bar claims in the civil context.  *See Denson*, 574 F.3d at 1346-47.

relief Plaintiff seeks—issuance of an order requiring Defendant, a supervisor who oversees the work of several nurse practitioners at the VA, to remain at least 100 yards away from the VA—would interfere with Defendant's ability to do her job. *See* Motion at 5-6. The Court agrees that requesting such relief triggers an analysis of sovereign immunity and the Supremacy Clause. That analysis leads to the conclusion that neither protection immunizes Defendant from this lawsuit because the scope-of-authority exception applies. Specifically, when Defendant sexually harassed Plaintiff (*e.g.*, sharing her sexual history and graphic stories on after-hours phone calls), she did not act within the scope of her authority as an employee of the VA. *Cf. Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 757 (1998) ("The general rule is that sexual harassment by a supervisor is not conduct within the scope of employment."); *Arizona v. Files*, 36 F. Supp. 3d 873, 884 (D. Ariz. 2014) ("The [Supremacy Clause] does not protect a federal officer who misuses his or her position to further wholly personal interests."). Defendant does not explain how the alleged sexual harassment falls within the scope of her authority[5], and the Court is not aware of any court holding that sexual harassment falls within the scope of a federal employee's authority.[6]

Defendant's authorities do not compel a different result (*see* Motion at 5-6; Dkt. 17 at 1):

- In *Coelho v. Chalas*, 23-cv-04525-SI, 2024 WL 150586 (N.D. Cal. Jan. 12, 2024), the defendants allegedly "abused their authority, harassed and bullied [the plaintiff], and ruined [the plaintiff's] military career." *See id.* at *1. The court held that sovereign immunity applied because the defendants' alleged conduct "ar[o]se out of workplace

---

[5] Plaintiff offers no legal argument in her opposition and instead recites her factual allegations. Defendant argues that in doing so, Plaintiff "does not challenge the legal principles requiring dismissal." *See* Dkt. 17 at 2. The Court disagrees because Plaintiff's discussion of Defendant's alleged sexual harassment (*i.e.*, non-authorized conduct) counters Defendant's invocations of sovereign immunity and the Supremacy Clause.

[6] Some courts hold that "where an employee is able to sexually harass another employee because of the authority or apparent authority vested in him by the employer, it may be said that the harasser's actions took place within the scope of his employment." *See Ohio Gov't Risk Mgmt. Plan v. Harrison*, 115 Ohio St. 3d 241, 243 (2007) (citation omitted). But an action may fall within the scope of an individual's <u>employment</u> while remaining outside the scope of their <u>authority</u>. *See McIntyre ex rel. Est. of McIntyre v. United States*, 545 F.3d 27, 38-39 (1st Cir. 2008) (scope of employment "may extend beyond the employee's explicit authority" (citation omitted)).

conduct, and none of the alleged harassment was unrelated to work." *See id.* at *3. That reasoning does not apply here, where Defendant's alleged sexual harassment does not concern her work at the VA.

- In *Rodriguez v. Chalas*, 23-cv-04728-SI, 2024 WL 150596 (N.D. Cal. Jan. 12, 2024), the defendant allegedly threatened to terminate the plaintiff's employment and "inflicted verbal and emotional abuse" on the plaintiff. *See id.* at *1. The court held that sovereign immunity applied because the plaintiff's "claims of harassment . . . are based on work-related acts, and [] none of the alleged harassment was unrelated to work." *See id.* at *2. Again, that reasoning does not apply to the sexual harassment alleged here.

- In *Clark v. United States*, 21-cv-00507-MJP, 2021 WL 3129623 (W.D. Wash. July 23, 2021), the plaintiff offered a general allegation of workplace harassment, and the United States Attorney submitted a certification averring that the alleged harasser had "act[ed] within the scope of his official duties of employment." *See id.* at *1. The court held that sovereign immunity applied because "all of the allegations in the petition relate to conduct in the course of duties at a federal agency." *See id.* at *2. As explained above, however, Defendant's alleged sexual harassment does not relate to workplace conduct.

- In *Sherill v. Van Cleave*, No. 22-cv-01274-PHX, 2022 WL 14644390 (D. Ariz. Oct. 25, 2022), the plaintiff alleged that the defendant "made inappropriate comments to [him], yelled and pointed his finger in [his] face, blocked [him] from leaving a room, and struck a shelf near [his] face," and the United States Attorney submitted a certification averring that the defendant "was acting within the scope of his employment . . . at the time of the workplace conduct." *See id.* at *1-2. The court held that sovereign immunity applied because "[t]he challenged acts were taken by [the defendant] under color of his office as a supervisor for the United States [Department of Veterans Affairs], an agency of the federal government." *See id.* at *4 (citation omitted). But here, the alleged sexual harassment did not implicate Defendant's work at the VA.

- In *Kline v. Johns*, No. 21-cv-03924-KAW, 2021 WL 3555734 (N.D. Cal. Aug. 2, 2021), the court did not discuss the scope-of-authority exception.

7

### B. The Derivative-Jurisdiction Doctrine Does Not Bar Plaintiff's Claim

Under the derivative-jurisdiction doctrine, if a state court lacks subject-matter jurisdiction over an action, and the defendant subsequently removes the action to federal court, the federal court must dismiss the action for lack of subject-matter jurisdiction even if the federal court would have had subject-matter jurisdiction over the action had it been commenced in federal court.[7] *See Acosta v. Kijakazi*, No. 22-55288, 2023 WL 3033499, at *1 (9th Cir. Apr. 21, 2023). Defendant argues that the doctrine compels dismissal here because, when Plaintiff commenced this action in state court, that court lacked original jurisdiction under the doctrine of sovereign immunity and the Supremacy Clause. *See* Motion at 6-7. As discussed above, however, neither sovereign immunity nor the Supremacy Clause bar Plaintiff's suit at the pleading stage, and thus neither would have deprived the state court of subject-matter jurisdiction over this action. The Court, therefore, declines to dismiss this action under the derivative-jurisdiction doctrine.

* * *

The Court recognizes that some of Defendant's alleged harassment occurred within the workplace and that some of Plaintiff's requested relief could prevent Defendant from working at the VA altogether. Defendant remains free to challenge the scope of Plaintiff's requested relief at a later stage of this action. But in the Motion, Defendant seeks dismissal of the <u>entirety</u> of this action, and the Court cannot conclude that either the doctrine of sovereign immunity, the Supremacy Clause or the doctrine of derivative jurisdiction mandates that outcome.

///
///
///
///
///
///

---

[7] "Although Congress has abolished [the derivative-jurisdiction] doctrine with respect to the general removal statute, 28 U.S.C. § 1441(a), [the Ninth Circuit] has recently reaffirmed that the doctrine still applies to the federal officer removal statute." *Rodriguez v. United States*, 788 F. App'x 535, 536 (9th Cir. 2019) (citation omitted).

IV. **CONCLUSION**

For the foregoing reasons, the Court **DENIES** the Motion. The Parties shall appear for an initial case-management conference on **September 10, 2024** and shall file a joint case-management statement by **September 3, 2024**.

**SO ORDERED.**

Dated: July 9, 2024

_____
SUSAN VAN KEULEN
United States Magistrate Judge